# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARCO ANTONIO GUZMAN,<br>*Plaintiff* | §<br>§<br>§ | |
| -vs- | §<br>§ | SA-25-CV-00734-XR |
| LAKEVIEW LOAN SERVICING, LLC;<br>LOANCARE, INC.;<br>*Defendants* | §<br>§<br>§<br>§ | |

## ORDER ON MOTION TO DISMISS

On this date, the Court considered Defendants' motion to dismiss this action for failure to state a claim (ECF No. 24), Plaintiff's response (ECF No. 27), Defendants' reply (ECF No. 28), and the parties' arguments at the status conference held on September 30, 2025. After careful consideration, the motion is **GRANTED**.

## BACKGROUND

On or about June 30, 2025, Plaintiff Marco Antonio Guzman, proceeding *pro se*, filed suit against Defendants Lakeview Loan Servicing, LLC ("Lakeview") and LoanCare, Inc. ("LoanCare"), asserting claims for wrongful foreclosure, lack of standing, dual collateralization, and civil rights violations and seeking to prevent the foreclosure of his home located at 14530 Los Lunas Road, Helotes, Texas (the "Property"). *See* ECF No. 5.[1]

---

[1] Though not identified in the caption or referenced in the Complaint, Plaintiff lists both Julio Aldecocea, President of Lakeview, and Dave Worrall, President of LoanCare (collectively, the "Officers") as Defendants No. 1 and 2 in his original complaint. *See* ECF No. 5 at 2. It appears that Plaintiff referenced these individuals solely for purpose of effectuating service and did not intend to style the case to include both executives. *See id.* at 7 (referring only to Lakeview and LoanCare in the Statement of Claim). If Plaintiff intended to assert claims against the Officers, those claims fail because the Complaint does not allege any facts evincing personal involvement in the alleged wrongdoing. *See Janjua-Vessel v. Bray*, No. 4:23-CV-766-ALM-KPJ, 2024 WL 4275809, at *5 (E.D. Tex. Aug. 25, 2024), *report and recommendation adopted*, No. 4:23-CV-766, 2024 WL 4268442 (E.D. Tex. Sept. 23, 2024) ("[U]nder Texas law, a corporate officer is not liable for the acts or debts of the corporation and can only be personally liable for the tortious acts which he 'directs or participates in during his employment.'") (quoting *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984)).

Thereafter, Plaintiff moved for a temporary restraining order, seeking to prevent a foreclosure sale scheduled for July 1, 2025. *See* ECF No. 4. The Court denied the motion on the same date for failure to establish a likelihood of success on the merits:

> First, Plaintiff argues that there was a "Lack of Required Notice" under Texas Property Code 51.002. ECF No. 4 at 1. But Section 51.002 "does not provide Plaintiff with a cause of action prior to an actual foreclosure sale." *Suarez v. Ocwen Loan Servicing, LLC*, No. 5:15-CV-664-DAE, 2015 WL 7076674, at *3 (W.D. Tex. Nov. 12, 2015); *see also Solis v. U.S. Bank, N.A.*, No. H-16-661, 2017 WL 4479957, at *2 (S.D. Tex. June 23, 2017) ("Section 51.002 of the Texas Property Code, however, does not provide a private right of action" and is instead "construed" as a "claim[] for wrongful foreclosure."). Second, Plaintiff's theory that LoanCare, Inc. lacks standing to foreclose for failure to provide a proof of claim - a "show-me-the-note" theory - has been rejected. *See Arrington v. Green Tree Servicing, LLC*, No. H-12-3635, 2013 WL 1352227, at *2 (S.D. Tex. April 2, 2013) (denying injunction); *Crear v. JP Morgan Chase Bank, N.A.*, 2011 WL 1129574, at *1, n.1 (5th Cir. Mar. 28, 2011) (unpublished) (per curiam).

*See* Text Order dated June 30, 2025.

Plaintiff subsequently submitted a motion to reconsider the Court's denial of his motion for temporary restraining order, attaching new evidence that he claimed was "inadvertently left out." ECF No. 8-1 at 1. Again, the Court denied the motion:

> This evidence, however, was previously available, and does not help Plaintiff, who seeks to use it to raise a "split-the-note" theory. This has been rejected by the Fifth Circuit. *See Martins v. BAC Home Loans Servicing, L.P.*,722 F.3d 249, 255 (5th Cir. 2013). Plaintiff also raises a theory that was not raised in his Motion for a TRO; that Defendants violated the federal Real Estate Settlement Procedures Act (RESPA). But Plaintiff does not explain why Defendants were required to provide a written response under RESPA. Even if they were, Plaintiff does not allege that he suffered actual damages "sustained as a proximate result of Defendants' *failure to respond* to [his letters], not damages arising from unrelated alleged loan servicing practices." *See Cantrell v. Washington Mutual Bank, F.A.*, No. A-11-CA-220-SS, 2011 WL 13324006, at *3–4 (W.D. Tex. May 17, 2011).

*See* Text Order dated July 2, 2025.

Defendants moved to dismiss Plaintiff's complaint in its entirety, largely on the same bases that informed the Court's earlier conclusions that Plaintiff was unlikely to succeed on the merits. *See* ECF No. 10.

Plaintiff than filed an amended complaint, mooting the motion to dismiss. Plaintiff's amended complaint abandons his "show-me-the-note" and "split-the-note" theories of wrongful foreclosure and his claims for civil rights violations. *See* ECF No. 17.[2] In his amended complaint, Plaintiff alleges that Defendants (1) wrongfully foreclosed on the Property based on an invalid lien that had been released in 2021; (2) violated RESPA by failing to properly and timely respond to his Qualified Written Requests ("QWRs"); and (3) breached the Loan Agreement and the Truth in Lending Act ("TILA") by failing to provide periodic monthly statements. *Id.* at 2–3. He seeks over one million dollars in damages and an injunction prohibiting the sale of the Property.

Defendants now move to dismiss Plaintiff's amended complaint. ECF No. 24. They argue that (1) Plaintiff's claim for wrongful foreclosure should be dismissed because Defendants are attempting to foreclose on an existing lien, not as Plaintiff argues, a lien released in 2021; (2) his RESPA claims fail because he has not attached any QWRs to the pleading; (3) his breach-of-contract claim fails because he has not identified a specific provision of any of the loan documents that was allegedly breached; and (4) his TILA claims are barred by the statute of limitations. ECF No. 24. The Court addresses each argument in turn.

---

[2] "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *Stewart v. City of Hous. Police Dep't*, 372 F. App'x 475, 478 (5th Cir. 2010) (per curiam).

**DISCUSSION**[3]

## I.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions'

---

[3] The Court notes that Plaintiff is proceeding *pro se* in this case. While courts "liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel, *pro se* parties must still brief the issues and reasonably comply with [federal procedural rules]." *U.S. Bank Nat'l Ass'n v. Johnson*, No. 1:15-CV-788-RP, 2017 WL 598499, at *2 (W.D. Tex. Feb. 14, 2017) (quoting *Grant v. Cuellar*, 59 F.3d 524, 524 (5th Cir. 1995).

devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration marks omitted).

## II.    Analysis

### A.    Wrongful Foreclosure

Plaintiff has not adequately pled a claim for wrongful foreclosure, which requires a claimant to allege: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *Duncan v. Hindy*, 590 S.W.3d 713, 723 (Tex. App.—Eastland 2019, pet. denied).

Plaintiff's claim for wrongful foreclosure fails for several reasons. To begin, he cannot plausibly allege that the Property sold for a "grossly inadequate selling price" because, according to Plaintiff, the Property has not been sold. *See* ECF No. 17 at 2 (alleging that "the property *did not* sell" because a purported defect in Defendants' lien "deterred potential buyers and *would have reduced the price* they were willing to pay *if* any bids on the property had been made") (emphasis added). Texas courts do not recognize an action for attempted or anticipatory wrongful foreclosure, *See Filgueira v. U.S. Bank Nat. Ass'n*, 734 F.3d 420, 423 (5th Cir. 2013) ("Without a sale of the house, there can be no viable wrongful foreclosure claim under Texas law.").

Moreover, the premise of Plaintiff's claim—that a prior lien on the property was released and that Lakeview's subsequent lien did not re-establish "priority" over other encumbrances on the Property—is meritless. Plaintiff accurately notes that a lien was released in 2021. *See* ECF No. 17 at 2. But that security interest, a deed of trust executed in 2019, was released in 2021 when Plaintiff refinanced the earlier loan. *See* ECF No. 24-2 (2019 Deed of Trust); ECF No. 24-1 (2021 Release

of 2019 Lien).[4] The new loan was secured by a new Deed of Trust, which was executed in May

2021 (ECF No. 24-3), recorded in Bexar County in September 2021 (*id.*), and assigned to Lakeview

in September 2022 (ECF No. 24-4). The release of the previous lien in 2021 has no bearing on the

validity of Lakeview's *present* lien on the Property.[5]

In sum, Plaintiff has failed to state a claim for wrongful foreclosure.

### B.    RESPA Violations

Plaintiff asserts that Defendants violated RESPA by failing to properly respond to his

QWRs. *See* ECF No. 17 at 2–3.

RESPA is a consumer protection statute that requires loan servicers to provide timely

written responses to borrowers under certain circumstances. 12 U.S.C. § 2605. Such a request must

be made in writing, enable the loan servicer to identify the name and account of the borrower, and

include a statement that the account is either in error or set out the other information sought by the

borrower. 12 U.S.C. § 2605(e)(1)(B); *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d.

747, 768 (N.D. Tex. Mar. 29, 2012).

Within thirty days of receipt of a QWR, the servicer must either make appropriate

corrections to the borrower's account or, after investigation, provide a written explanation

including a statement of reasons the servicer believes the account is correct or any other

information requested by the borrower. 12 U.S.C. § 2605(e)(2). To state a viable claim under

Section 2605(e), a plaintiff must plead (1) his correspondence met the requirements of a "qualified

---

[4] In determining a motion to dismiss, courts must consider the complaint as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). *See Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (documents that defendant attaches to motion to dismiss are considered part of pleadings if they are referred to in plaintiff's complaint and are central to his claim).

[5] Nor is it clear that Plaintiff, as the borrower, would have standing to challenge lien priority.

written request," (2) that defendant failed to timely respond to the request, and (3) that the failure caused plaintiff damages. *Williams v. Wells Fargo Bank*, 560 F. App'x 233, 241 (5th Cir. 2014).

The QWRs must be of the type that require a response, namely, that they are not merely duplicative of previous correspondence submitted by the borrower and specifically concern the servicing of the loan. *See Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 667 n.5 (9th Cir. 2012) (collecting district court cases holding correspondence challenging loan validity do not relate to servicing); *Chambers v. Citimortgage, Inc.*, No. A-14-CA-86-SS, 2014 WL 1819970, at *3–5 (W.D. Tex. May 7, 2014) (requests for identity of loan holder and information on securitization do not pertain to servicing so are QWRs under RESPA); *Holloway v. Wells Fargo Bank, N.A.*, No. 3:12-CV-2184-G(BH), 2013 WL 1187156, at *23 (N.D. Tex. Feb. 26, 2013), *adopted*, 2013 WL 1189215 (N.D. Tex. Mar. 22, 2013) (request for copies of note, deed of trust, and assignments fails to state RESPA claim); *Medina v. Parkside Lending, LLC*, No. 1:19-CV-109-RP, 2022 WL 5585750, at *4 (W.D. Tex. Aug. 22, 2022) ("requests for a loan modification are not, and cannot be, considered a [QWR] for information about the loan servicing within the meaning of RESPA")); *Ecker v. Freedom Mortg. Corp.*, No. 5:19-CV-1488-DAE, 2020 WL 10054494, at *3 (W.D. Tex. 2020) ("Unless the contents of a QWR relate to the servicing of the loan, a servicer does not have an obligation to respond.").

Under RESPA, a loan servicer must respond to a borrower's QWR concerning a loan by either: (1) making any necessary corrections in the borrower's account and notifying the borrower of the corrections in writing; (2) providing the borrower with a written explanation stating the reasons why the servicer believes the borrower's account to be correct; or (3) providing a written explanation that includes information requested by the borrower or an explanation why such information cannot be obtained. 12 U.S.C. § 2605.

Defendants argue that Plaintiff has not plausibly alleged a RESPA violation because he has not attached the relevant QWRs to the complaint.[6] ECF No. 24 at 5–6. In response, Plaintiff directs the Court to purported QWRs attached to his original complaint. *See* ECF No. 27 at 5 (citing Exhs. A–J to his original complaint, ECF Nos. 1-3–1-12). But many of the exhibits do not appear to be communications directed at LoanCare, let alone constitute QWRs requiring responses. For example, the attachments include numerous "affidavits" directed to no one in particular, some of which were signed on the same date as Plaintiff's amended complaint. *See* ECF Nos. 1-3; *see also* ECF No. 1-4 (listing purported QWRs sent in February, April, May, and June 2024). And the letters directed to LoanCare generally did not require a response because they do not bear on the servicing of the loan and instead seek to challenge the validity of the loan and request loan documents. *See Chambers*, 2014 WL 1819970, at *3–5; *Medina*, 2022 WL 5585750, at *4; *Ecker*, 2020 WL 10054494, at *3.

Even so, LoanCare's servicing records show that it provided many written responses to Plaintiff addressing each of his communications, which, in general are repetitive and nonsensical. *See* ECF Nos. 24-5–24-8 (responses to Plaintiff in March, May, and June 2024). As noted by LoanCare in its responses, Plaintiff's correspondences have the hallmarks of sovereign citizen arguments seeking to avoid honoring financial obligations. Courts, including the Fifth Circuit, have routinely rejected these arguments as "frivolous and entirely without merit." *Watson v. Tex. State Univ.*, 829 F. App'x 686 (5th Cir. Nov. 13, 2020) (per curiam) (noting appellant's "reliance on meritless legal theories associated with the sovereign citizen movement," dismissing appeal as

---

[6] *See Chambers v. CitiMortgage, Inc.*, No. G-14-222, 2014 WL 1819970, at *2 (W.D. Tex. May 6, 2014) (citing *Sheikholeslami v. BAC Home Loans Servicing, L.P.*, No. 4:11-CV-462, 2012 WL 669932, at *3 (E.D. Tex. Jan. 31, 2012), *report and recommendation adopted*, 2012 WL 669936 (E.D. Tex. Feb. 29, 2012) (dismissing RESPA QWR claim where plaintiff's failed to "attach their writings to the complaint or otherwise set forth the alleged contents of those writing.").

frivolous, and imposing sanction); *see also Jennings v. United States*, No. PE-24-CV-46-DC-DF, 2025 WL 1921786, at *2 (W.D. Tex. June 24, 2025) (collecting cases finding sovereign citizen claims legally frivolous), *report and recommendation* adopted, 2025 WL 1921437 (W.D. Tex. July 11, 2025); *Gooden-El v. Tarrant County*, No. 4:20-CV-116-O, 2021 WL 793758, at *2 (N.D. Tex. Mar. 2, 2021) (same).

Moreover, Plaintiff fails to plead any damages resulting from Defendants' alleged RESPA violations. *See id.* at 6–9. To have standing to bring a RESPA claim, Plaintiff must plausibly allege actual damages arising from the defendant's alleged RESPA violations. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Moreover, actual damages are an essential element of a RESPA claim. 12 U.S.C. § 2605(f)(1); *see Williams v. Freedom Mortg. Corp.*, No. 3:22-cv-01973, 2023 WL 1806023, at *2 (N.D. Tex. Feb. 7, 2023) ("RESPA claims [] require actual damages."). "A scheduled foreclosure which does not occur is not a sufficient injury to state a RESPA claim." *Castillo v. NewRez LLC*, No. SA-21-CV-00437-XR, 2022 WL 958382, at *4 (W.D. Tex. Mar. 29, 2022) (citing *Perez v. Wells Fargo USA Holdings, Inc.*, No. 7:19-cv-317, 2019 WL 6687704, at *9 (S.D. Tex. Dec. 6, 2019)).

In sum, Plaintiff fails to plausibly allege a RESPA violation.

### C.    Breach of Contract

Plaintiff alleges that Defendants failed to provide him with periodic mortgage statements in violation of the loan agreement. ECF No. 17 at 3.

In Texas, a claim for breach of contract requires "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—

Houston 2005, pet. denied)). Moreover, to properly plead a breach-of-contract claim in a wrongful foreclosure case, "a plaintiff must identify a specific provision of the contract that was allegedly breached." *Innova Hosp. San Antonio, L.P.*, 995 F. Supp. 2d at 602; *see also Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 238 (5th Cir. 2014) ("It has been held that a claim for breach of a note and deed of trust must identify the specific provision in the contract that was breached."); *Guajardo v. JP Morgan Chase Bank, N.A.*, 605 F. App'x 240, 244 (5th Cir. 2015) (affirming dismissal of breach-of-contract claim where plaintiff did not specify which provision in the deed of trust was breached).

Plaintiff does not allege that Defendants have violated any specific provision of any of the loan documents but asserts generally that "[m]ortgage and servicing agreements require the servicer to provide regular account statements. By failing to do so, the servicer violated a fundamental term of the contract, further invalidating the basis for the foreclosure." ECF No. 17 at 3. Plaintiff has thus failed to state a plausible claim for breach of contract.

### D.    TILA Violations

Plaintiff alleges that Defendants violated TILA, 15 U.S.C. § 1601 *et seq.*, and its implementing regulation, Regulation Z, 12 C.F.R. § 1026 *et seq.*, by failing to provide periodic billing statements. *See* ECF No. 17 at 3.

TILA was designed to promote the informed use of credit by assuring "meaningful disclosure of credit terms" to customers. 15 U.S.C. § 1601(a). Regulation Z requires servicers of home mortgage loans to provide consumers with periodic statements for every billing cycle. 12 C.F.R. § 0026.41(a). The "periodic statement must be delivered or placed in the mail within a reasonably prompt time after the payment due date or the end of any courtesy period provided for the previous billing cycle." *Id.* § 1026.41(b). Regulation Z also mandates that the statement include

certain contents like the amount due, amount of any late payment fees, explanations of amounts due, and certain account information. *Id.* § 1026.41(c)–(d). Generally, TILA claims must be brought within one year. 15 U.S.C. § 1640(e).

The timeline of Plaintiff's TILA claim is unclear. He purports both that Defendants have failed to provide him with "periodic monthly statements *for the entire duration of the alleged* loan" but also alleges that they stopped providing statements in October 2022.[7] ECF No. 17 at 3. LoanCare, for its part, maintains that it provided Plaintiff with periodic account statements and provides a "small sampling" of those statements. *See* ECF No. 24 at 7; ECF No. 24-9 (attachment containing two account statements—one from May 17, 2021, and another from June 16, 2025). *See* ECF No. 24-9. In any event, an action for damages under Section 1640 is subject to a one-year limitations period. *See* 15 U.S.C. § 1640(e) ("[A]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation[.]]").

Assuming Plaintiff has timely claims for LoanCare's failure to deliver periodic statements sometime in the one-year period before he first asserted his TILA claim on August 25, 2025 (ECF No. 17), Plaintiff has not *plausibly* alleged that he suffered damages as a result. To be sure, he insists that "[t]he lack of monthly statements made it impossible for the Plaintiff to accurately track his alleged payments and loan status, preventing them from effectively managing their alleged

---

[7] In his response, Plaintiff asserts a new theory of liability under TILA—that "Defendants failed to notify Plaintiff within 30 days of each loan transfer, as required by 15 U.S.C. § 1641(g)." ECF No. 27 at 6. Setting aside that a party may not use a response to a motion to dismiss as a vehicle to amend their complaint, *In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 676 (N.D. Tex. 2013), Plaintiff does not plausibly allege a violation of TILA's transfer notice requirements. He does not identify the parties to the purported transfer or, for limitations purposes, the timing of the transfer.

Similarly, Plaintiff's response includes a section addressing the Uniform Commercial Code ("UCC") and attempts to revive his "show-me-the-note" theory, *see* ECF No. 27 at 5–6, neither of which was included in his original complaint. The Court will not address those arguments, which have already been rejected in the context of Plaintiff's requests for emergency relief and, in any event, and are not properly before the Court.

loan and potentially curing any alleged default." *See* ECF No. 17 at 3. But this theory of harm is not plausible considering Plaintiff's history, from as early as February 2023 (*see* ECF No. 1-5), of repeatedly challenging the validity of the debt and/or purporting to pay the debt with fictitious "negotiable instruments" arising, presumably, out of sovereign citizen ideology. *See* ECF No. 1-5–1-11; ECF No. 24-5–24-8. Indeed, Plaintiff does not allege—and the Court cannot reasonably infer from the record—that had Plaintiff received the purportedly missing statements, he *would have* made his monthly payments in full and on time. *See Wolfkiel v. Selene Fin., LP*, No. 3:25-CV-0834-B, 2025 WL 3154523, at *3 (N.D. Tex. Nov. 12, 2025) (dismissing TILA claim for lack of standing because plaintiff did not "allege how not receiving certain monthly mortgage statements affected his property or monetary interests" or "claim that had the statements been received, his condition or defaulted status would have been materially changed").

Plaintiff has thus failed to state a claim for damages under TILA.

### E.      Claim for Injunctive Relief

"Under Texas law, a request for injunctive relief is not itself a cause of action but depends on an underlying cause of action." *Cook v. Wells Fargo Bank, N.A.*, No. 3:10–CV–0592–D, 2010 WL 2772445, at *4 (N.D. Tex. July 12, 2010) (citing *Brown v. Ke–Ping Xie*, 260 S.W.3d 118, 122 (Tex. App.—Houston [1st Dist.] 2008, no pet.), *abrogated on other grounds* by *Tex Dep't of Aging & Disability Servs. v. Cannon*, 453 S.W.3d 411 (Tex. 2015)). Because Plaintiff's substantive claims fail as a matter of law, they cannot support a claim for injunctive relief.

### F.      Leave to Amend

Rule 15(a) applies when a plaintiff has "expressly requested" leave to amend even though its request "was not contained in a properly captioned motion paper." *United States v. Humana Health Plan*, 336 F.3d 375, 387 (5th Cir. 2003). A formal motion is not always required, so long

as the requesting party has set forth with particularity the grounds for the amendment and the relief sought. *Id.* (citing FED. R. CIV. P. 7(b) and *Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442, 1445–46 (9th Cir. 1990)). But "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought, *cf.* FED. R. CIV. P. 7(b)— does not constitute a motion within the contemplation of Rule 15(a)." *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993); *see Douglas v. DePhillips*, 740 F. App'x 403, 406 (5th Cir. 2018) ("At the end of their opposition to the motion to dismiss, Appellants stated that they 'should be given an opportunity to amend . . . to further state any claims considered deficient' and 'to plead further' Richard's claims. These statements are insufficient to constitute a request for leave to amend under Rule 15(a).").

In his response, Plaintiff seeks leave to amend his complaint, asserting that "[b]ecause [his] claims rest on written evidence and recorded instruments, amendment would not be futile." ECF No. 27. Plaintiff has already amended his complaint once. *See* ECF No. 17. His bare request for leave to further amend his complaint in response to Defendants' motion—with no indication of the particular grounds on which the amendment is sought—is insufficient to constitute a motion under Rule 15(a).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 24) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**. A final judgment will follow pursuant to Rule 58.

The Clerk is **DIRECTED** to **CLOSE** this case.

The Clerk is **FURTHER DIRECTED** to mail a copy of this Order and the Final Judgment to Marco Antonio Guzman at 14530 Los Lunas Road Helotes, TX, 78023.

It is so **ORDERED**.

**SIGNED** this 18th day of November, 2025.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE